## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:21-CR-100-MR-WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| DOUGLAS EDWARD COOK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's Motion to Suppress (Doc. 10), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.    Relevant Procedural Background

On December 7, 2021, Douglas Edward Cook ("Defendant") was indicted on one count of assaulting/resisting an officer in violation of 18 U.S.C. § 111(a)(1) and one count of assault in violation of 18 U.S.C. § 113(a)(6). Doc. 1.[1]

On December 20, 2021, Defendant made an initial appearance and counsel was appointed for him. On the same date, Defendant was arraigned and entered a plea of not guilty on both counts.

---

[1] As discussed in more detail below, before he was indicted, Defendant was charged with various misdemeanor offenses.

On January 19, 2022, Defendant filed the Motion to Suppress and a supporting memorandum. Doc. 10. The Government responded on January 26, 2022. Doc. 11.

By Order entered on February 1, 2022, the undersigned directed Defendant to file a reply to the Government's response. Doc. 12. Defendant did so on February 6, 2022. Doc. 13.

On March 2, 2022, the undersigned held an evidentiary hearing on the Motion.[2]

## II.   Factual Background

"When material facts that affect the resolution of a motion to suppress . . . are in conflict, the appropriate way to resolve the conflict is by holding an evidentiary hearing after which the district court will be in a position to make findings." United States v. Taylor, 13 F.3d 786, 789 (4th Cir.1994). In doing so, the court determines "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." United States v. Gualtero, 62 F. Supp. 3d 479,

---

[2] At the beginning of the proceeding, the Government contended that an evidentiary hearing on Defendant's Motion to Suppress was not needed. After hearing from counsel for the parties, and noting that the parties' witnesses were present, the undersigned elected to proceed with an evidentiary hearing so that the legal issues could be considered on a more complete factual record.

482 ((E.D. Va. 2014) (citing United States v. McKneely, 6 F.3d 1447, 1452-53 (10th Cir. 1993)).

## A. Evidence Presented

At the hearing, the Government called Steve Morehouse, a police officer with the Department of Veterans Affairs. The Government also offered, without objection, an image of signage at the Charles R. George Veterans Affairs Medical Center in Asheville, NC ("VAMC") and video footage from the VAMC's security system from the day in question.[3]

Defendant called Lt. Jason Rice, Officer Frank Horton, Sgt. Matthew Sullivan, and Officer James Moore, all of whom are law enforcement officers employed by the Department of Veterans Affairs. To his Motion, Defendant also attached a copy of an incident report and portions of a Veterans Affairs Handbook. Docs. 10-1 and 10-2.

## B. Factual Findings

Based on the information of record and as presented during the hearing, the undersigned finds the relevant facts to be as follows:

---

[3] The entire footage was introduced as the Government's Exhibit 1. The Government also introduced Exhibits 1A and 1C, which the undersigned understood were portions of the footage. Upon further review however, Exhibit 1A does not appear to be part of Exhibit 1.

### 1. Events Prior to August 10, 2021

The charges appearing in the December 7, 2021 indictment stem from events that occurred on August 10, 2021. However, VAMC police officers interacted with Defendant before that date.

Officer Morehouse, who has approximately 28 years of experience in law enforcement, testified that his first interaction with Defendant occurred on July 16, 2021, when Defendant had refused to wear a mask at the VAMC. Officer Morehouse testified that when he approached Defendant that day, Defendant stood up, balled his fists, and challenged Officer Morehouse to fight, threatening to gouge out his eyes and split open his head. Considering that conduct, citations were issued to Defendant.[4]

Officer Morehouse subsequently investigated Defendant's criminal history and discovered that charges were pending against him in Mecklenburg County, North Carolina and that a concealed carry permit had been issued to him.

---

[4] Those violation notices were subsequently dismissed without prejudice when Defendant was indicted. The Court may take judicial notice of these documents. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'") (citation omitted).

4

On July 31, 2021, the VAMC police received a call that Defendant had entered the premises and was not wearing a mask. Officer Morehouse testified that a separate officer issued a citation to Defendant at that time.[5]

Additionally, Officer Morehouse testified that other officers at the VAMC had contact with Defendant at some point during the prior year (presumably 2020) and that, during the interaction, Defendant had threatened to fight the officers while he was at the VAMC pharmacy.

## 2. August 10, 2021

On August 10, 2021, at approximately 7:00 PM, Defendant came to the VAMC for an imaging appointment. Because of a history of violence, Defendant was required to check in with the VAMC police each time he came to the facility. On the day in question, however, Defendant did not do so.

In addition, Defendant, who was not wearing a face covering, walked past an individual who was attempting to screen persons for COVID 19 and entered the building through the emergency department. He proceeded through the lobby and past a desk where the facility's administrative officer was on duty, making an obscene hand gesture to the screener (who was behind him) as he walked. The screener advised the administrative officer of Defendant's actions, and the administrative officer contacted the VAMC police

---

[5] The undersigned has not seen a copy of this citation.

dispatcher. The dispatcher then contacted Officer Morehouse just as he was beginning his evening shift. Meanwhile, Defendant made his way to the imaging clinic in the VAMC.

Officer Morehouse testified that on the day in question patients and visitors to the VAMC were required to wear facemasks. Signage to this effect was present and stated that persons who failed to wear a mask could be removed from the property and/or arrested or fined. He further testified that these signs were visible at the main entrance and the entrance to the emergency department. Other signs requiring social distancing were displayed in the VAMC clinics, including the imaging clinic.

Considering Officer Morehouse's prior interactions with Defendant and his knowledge of Defendant's history, when he received the call concerning Defendant on August 10, 2021, Officer Morehouse feared that Defendant would be hostile and noncompliant. Consequently, he assembled a team, which consisted of Lt. Rice, Sgt. Sullivan, Officer Horton, and Officer Moore, to approach Defendant. The evidence was inconsistent as to the specific amount of time the officers spent conferring and planning how to engage Defendant, but the witnesses agreed that a meeting for this purpose did take place in an office in the VAMC police department. Though Lt. Rice was the ranking officer in the group, Officer Morehouse assigned the tasks that each officer would perform when they encountered Defendant. Lt. Rice was designated to make

6

the initial contact with Defendant and attempt to de-escalate the situation. If it became necessary to take Defendant into custody, Officer Horton was to secure his right arm, Officer Moore was to secure his left arm, and Sgt. Sullivan was to handcuff Defendant.

At some point before the group travelled to the imaging clinic, dispatch advised Officer Morehouse that staff in the imaging clinic had reported that Defendant was being disruptive to the point that the staff members became nervous, left the room, and telephoned the VAMC police.

In view of this additional information, Officer Morehouse felt it was likely that the officers would need to take Defendant into custody and therefore wanted to engage him quickly so as not to give Defendant time to produce a weapon.

The officers then went to the imaging clinic. When they arrived, Defendant was seated alone in the waiting area and was not wearing a mask. Defendant promptly stood and Lt. Rice introduced himself to Defendant. Defendant began to move his left hand to his pocket, and Lt. Rice directed Defendant to keep his hands out of or away from his pockets. Officer Morehouse testified that, in his experience, suspects who have weapons often keep them in their waistbands and that the VAMC police officers encounter individuals with firearms and knives daily. It appears that Defendant was reaching for a cell phone, and that, in response to Lt. Rice's command, he

released it and it slid back into his pocket. Defendant asked the officers "what are you going to do – shoot me for having a cell phone?" or words to that effect.

Officer Morehouse further testified that at this point Defendant's breathing intensified and, therefore, based on his training and experience, as well as Defendant's body language and Defendant's history of threats, Officer Morehouse believed that a fight was imminent. Therefore, he told Defendant that he was under arrest.

Defendant responded by challenging the officers and uttering an obscenity at them.

Officer Morehouse then directed the group to go "hands on" and the officers approached Defendant, who struck Officer Moore. Lt. Rice, Sgt. Sullivan, and Officer Horton pushed Defendant to a nearby wall, and "an all out fight" occurred during which Lt. Rice deployed his pepper spray toward Defendant. Soon thereafter, multiple officers were on the floor with Defendant, Officer Horton was away from the group and trying to recover from exposure to the pepper spray, Lt. Rice and Officer Moore were also choking from the spray and, at one point, Officer Moore was yelling that Defendant was gouging his eyes out and that he (Officer Moore) was bleeding.

The officers were able to gain control of Defendant on the floor and he was handcuffed. He was rolled to his side and his face was decontaminated

from the pepper spray using water and cloths that were provided by imaging clinic staff.[6]

No evidence was recovered from Defendant's person. Defendant was subsequently interviewed following his arrest, though no information about that interview was presented during the hearing.

## III. Discussion

### A. The Parties' Positions

Defendant contends that his arrest was unlawful. Specifically, Defendant argues that, without an arrest warrant, a VAMC officer was only authorized to arrest a person suspected of having committed a misdemeanor offense upon probable cause that was developed in the officer's presence. Defendant further argues that the conduct the officers personally observed on August 10, 2021 did not provide them with probable cause to arrest Defendant.

The Government disagrees and contends that the officers were authorized to conduct a warrantless arrest of a person suspected of a misdemeanor offense based on information other than conduct that occurred in their presence. Further, the Government argues that probable cause to arrest Defendant existed in this case based on Defendant's conduct as personally observed by the officers.

---

[6] Additional citations were issued in connection with the events of August 10, 2021. Those citations were also later dismissed without prejudice.

## B. Defendant's Arrest

### 1. Warrantless Misdemeanor Arrests

In <u>Street v. Surdyka</u>, which involved a civil rights claim, the Fourth Circuit noted that Maryland state law followed the common law regarding warrantless arrests. Under those authorities, probable cause alone was not sufficient to support a warrantless arrest for a misdemeanor; the misdemeanor must also have been committed in the officer's presence. 492 F.2d 368, 370 (4th Cir. 1974). The <u>Street</u> court also explained that 42 U.S.C. § 1983 creates a federal cause of action for the violation of federal rights, not common law torts, and that "not all violations of state law rise to the level of constitutional tort." <u>Id</u>. at 371 (internal citations omitted). Consequently, the court stated that even if the arresting officer in <u>Street</u> had "violated Maryland arrest law, he [could] not be liable under section 1983 unless he also violated the federal constitutional law governing warrantless arrests." <u>Id</u>. On that point, the court concluded that the Fourth Amendment did not prohibit "warrantless arrests for misdemeanors committed outside an officer's presence." <u>Id</u>. at 372.

Thereafter, in 2001, the Supreme Court held that if "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001); <u>see also</u> <u>Maryland v. Pringle</u>, 540 U.S. 366, 370 (2003) (a

"warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause"); Virginia v. Moore, 553 U.S. 164, 176 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections").

Significantly, the Atwater Court declined to decide whether it is necessary that the conduct be committed "in the presence" of the officer. That is, while the Fourth Amendment *permits* a warrantless arrest for a misdemeanor offense upon probable cause and conduct carried out in the presence of the officer, the Court did not determine whether both probable cause and "in the presence" conduct are *required*. Atwater, 532 U.S. 318, 373 n. 11 (2001) (noting that it was not necessary to "speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests") (citing Welsh v. Wisconsin, 466 U.S. 740, 756, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (White, J., dissenting) ("[T]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment")).

Subsequently, district courts have continued to rely on Street in finding that the Fourth Amendment "does not prohibit warrantless arrests for misdemeanors committed outside of the presence of the arresting officer." United States v. Hall, Nos. 2:04PO00254, 2:04PO00255, 2005 WL 767115, at *3 (W.D. Va. Apr. 5, 2005) (citing Street, 492 F.2d at 372); United States v. Rivera, Case No. 7:15-cr-101, 2018 WL 6625080, at *3 (W.D. Va. Dec. 18, 2018) ("the Fourth Circuit has held that the Fourth Amendment does not prohibit warrantless arrests for misdemeanors committed outside of a law enforcement officer's presence," and "[t]hus, in the Fourth Circuit, an officer only needs probable cause to make a warrantless arrest for a misdemeanor committed outside of his presence"); see also United States v. Fay, No. 06-MJ-0203 DAD, 2007 WL 587186, at *6 (E.D. Cal. Feb. 26, 2007) ("In Street v. Surdyka… the court held that the Fourth Amendment does not prohibit warrantless arrests for misdemeanors committed outside the officer's presence"); United States v. McNeill, 484 F.3d 301, 311 (4th Cir. 2007) (stating that "[s]everal other circuits have held that the Fourth Amendment contains no 'in the presence' requirement, and none have reversed their position in the wake of Atwater and Pringle" but declining to reach the issue where there was probable cause to believe the misdemeanor offense had been committed in the officer's presence) (citations omitted).

In the instant case, Defendant cites <u>Moore</u> in support of his argument that there is an "in the presence" requirement for warrantless misdemeanor arrests under the Fourth Amendment. <u>See</u> <u>Moore</u>, 553 U.S. 164, 176 ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution….").

Defendant further argues that a section of the VA Handbook supports his position. That section states as follows:

> Statutory Arrest Authority
>
> (2) In the absence of an arrest warrant, VA Police officers may arrest <u>*only*</u> when:
>
>> (a) A felony is committed in the officer's presence or there is probable cause to believe that a felony has been committed and the person the officer intends to arrest committed the offense.
>>
>> (b) The offense is a misdemeanor or infraction and is committed in the officer's presence. If the misdemeanor is not committed in the officer's presence, the known facts of the incident will be committed communicated to the U.S. Attorney for guidance and instructions for the appropriate action to be taken.
>
> VA handbook, Doc. 10-2 at 6 (emphasis added).

## 2. Application

It is not necessary to determine whether the Fourth Amendment requires that a warrantless arrest for a misdemeanor be based on both probable cause and conduct carried out in the presence of a law enforcement officer since, as discussed below, the analysis under either scenario leads to the same result in this case.

### a. If Presence is Not Required

The Secretary of Veterans Affairs is to "prescribe regulations to provide for the maintenance of law and order and the protection of persons and property on [Department of Veterans Affairs ("Department")] property." 38 U.S.C. § 901(a)(1); 38 U.S.C. § 101(1).

The specific rules and regulations that govern Department property, and that apply to all persons entering in or on such property, appear in 38 C.F.R. § 1.218 and include:

> (4) Conformity with signs and emergency conditions. The head of the facility, or designee, shall have authority to post signs of a prohibitory and directory nature. Persons, in and on property, shall comply with such signs of a prohibitory or directory nature, and during emergencies, with the direction of police authorities and other authorized officials. Tampering with, destruction, marring, or removal of such posted signs is prohibited.
>
> (5) Disturbances. Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors,

14

offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited.

38 C.F.R. § 1.218.

Persons who violate these rules are subject to arrest and removal from the premises and to a term of imprisonment of up to six months. In addition, a person who fails to comply with signs of a directive and restrictive nature that are posted for safety purposes may be fined up to $50, while a person who engages in disorderly conduct "which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility" may be fined up to $250. 38 C.F.R. § 1.218(b)(6) & (11).

Department police officers are to enforce federal laws and the rules prescribed by the Secretary and may make arrests for violations of those provisions occurring on Department property. 38 U.S.C. § 902(a). Policies regarding the exercise of Department police officers' enforcement and arrest authority are also set by the Secretary. 38 U.S.C. § 902(b)(1).

15

In this case, Officer Morehouse testified that, when he advised Defendant that he was under arrest, Officer Morehouse had probable cause to believe that Defendant had violated the requirement that he comply with signs of a directive nature by failing to wear a facial covering and had committed the offense of disorderly conduct. The undersigned agrees.

### i.    Conformity with Signs

Officer Morehouse had personally interacted with Defendant in the past and was aware of his history of refusing to wear a mask at the VAMC. Signage was in place at the VAMC on the day in question directing that face coverings be worn, and the evidence indicated that Defendant walked past the COVID 19 screener and into the building. Further, when the officers encountered Defendant in the imaging clinic waiting room, he was not wearing a mask.[7]

### ii.    Disorderly Conduct

Similarly, at the time the officers encountered Defendant, they knew that Defendant had not checked in with the VAMC police as he was required to do when coming to the facility, had not complied with the COVID 19 screening requirement upon entering the building, and, perhaps most importantly, had acted in a threatening manner to the staff in the imaging

---

[7] During the hearing, defense counsel contended that probable cause was lacking because it was not clear that Defendant had violated all the elements of 38 C.F.R. § 1.218(a)(4). However, Defendant did not describe those elements or identify the ones for which he believed the officers did not have probable cause.

16

clinic such that they moved to another room and called the VAMC police. This information, coupled with the information the officers had about Defendant's prior interactions with law enforcement, provided probable cause for them to believe that Defendant had committed the offense of disorderly conduct.

### b. If Presence is Required

Should it be determined that a warrantless misdemeanor arrest may only be based on conduct occurring in the presence of a law enforcement officer, as Defendant argues here, Defendant's arrest was nonetheless lawful.

### i. Conformity with Signs

As soon as the officers entered the imaging clinic waiting room, it was apparent that Defendant was not wearing a mask. In addition, the officers' knowledge of Defendant's refusal to wear a mask on previous visits to the VAMC, his refusal to be screened for COVID 19 upon entering the VAMC that day, and the presence of signage stating that face coverings were required, all supported probable cause to affect a warrantless arrest on that basis.

### ii. Disorderly Conduct

The Government also contends that the officers had probable cause to arrest Defendant for disorderly conduct based on his actions occurring in their presence. This argument presents a much closer call.

"[A]n arrest is defined using an objective standard: whether 'the suspect's freedom of action is curtailed to a degree associated with formal

arrest.'" United States v. Elston, 479 F.3d 314, 319 (4th Cir. 2007) (quoting Park v. Shiflett, 250 F.3d 843, 850 (4th Cir. 2001)); see also Beck v. State of Ohio, 379 U.S. 89, 91 (1964) ("Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense").

During the hearing, and consistent with this principle, the parties agreed that an officer's oral announcement that a suspect is under arrest does not, by itself, conclusively demonstrate that the suspect is under arrest for Fourth Amendment purposes at that instant.

Nonetheless, if Defendant's arrest is deemed to have occurred at the moment Officer Morehouse stated that Defendant was under arrest, the undersigned is not persuaded that the conduct the officers observed between the time they entered the imaging clinic waiting room and that announcement provided them with probable cause to believe Defendant had committed the offense of disorderly conduct.

Conversely, if Defendant's arrest is deemed to have occurred when he was handcuffed and subdued, and following his physical altercation with the officers, sufficient probable cause would exist.

It is not necessary, though, to parse the events that occurred during the brief time that elapsed between Officer Morehouse's announcement and the moment that Defendant was physically subdued since, even if probable cause for an arrest for disorderly conduct was lacking, the officers were authorized to arrest Defendant for violation of the VAMC's directives regarding masking. Accord Gantt v. Whitaker, 57 F.App'x 141, 149 n.7 (4th Cir. 2003) (per curiam) ("other courts have held that an officer must have probable cause for at least one charge for an arrest on multiple charges to withstand a Fourth Amendment challenge").

### C. Potential Suppression of the Evidence

No physical evidence was taken from Defendant and there is no indication that Defendant made any inculpatory statements while in custody. Therefore, it appears that the evidence Defendant seeks to suppress consists of the video footage of the events of August 10 as well as the oral testimony of the officers.

However, Defendant has not explained why images from the VAMC security system, which records continuously, should be considered fruits of the poisonous tree and subject to suppression. Similarly, Defendant has provided no authorities to support the suppression of the testimony of eyewitnesses to the events in question.

## IV.    Recommendation

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion to Suppress (Doc. 10) be **DENIED**.

Signed: April 6, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).